UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| FELIPE NERY GOMEZ, | ) | CASE NO. 23-03023 |
| | ) | |
| DEBTOR. | ) | HON. A. BENJAMIN GOLDGAR |
| | ) | |

**NOTICE OF MOTION**

TO: See attached list

PLEASE TAKE NOTICE that on **Monday, September 18, 2023, at 9:30 a.m.**, I will appear before the Honorable A. Benjamin Goldgar, or any judge sitting in that judge's place, **either** in courtroom 642 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 **or** electronically as described below, and present the United States Trustee's **Motion to Sanction Debtor,** a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 161 500 0972 and the password is 726993**.** The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

/s/ Adam G. Brief
Adam G. Brief, Assistant U.S. Trustee
Office of the United States Trustee
219 South Dearborn, Room 873
Chicago, Illinois 60604
Tel. (312) 886-2805

1

## CERTIFICATE OF SERVICE

I, Adam G. Brief, Trial Attorney, certify that on September 11, 2023, I caused to be served copies of the **Notice of Motion and Motion of the United States Trustee to Sanction Debtor** on the ECF Registrants shown below *via* the Court's Electronic Notice for Registrants and *via* First Class US Mail.

*/s/ Adam G. Brief*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

- **Frank J Kokoszka**        trustee@k-jlaw.com
- **Richard W. Hess**         rhess@susmangodfrey.com
- **Steven H. Leech**         s.leech@gozdel.com
- **Jeffrey M. Heftman**      j.heftman@gozdel.com
- **Oscar Stilley**           oscarstilley@gmail.com

**Parties Served via First Class Mail:**

Felipe Nery Gomez
P.O. Box #7139
Villa Park, IL  60181

Synchrony Bank
 c/o PRA Receivables Management, LLC
P.O. Box 41021
Norfolk, VA 23541

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| FELIPE NERY GOMEZ, | ) | CASE NO. 23-03023 |
| | ) | |
| DEBTOR. | ) | HON. A. BENJAMIN GOLDGAR |
| | ) | |

**UNITED STATES TRUSTEE'S MOTION TO SANCTION DEBTOR**

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (U.S. Trustee), by Assistant U.S. Trustee Adam G. Brief (AUST), with his Motion to Sanction Debtor (Motion). In support of his Motion, the U.S. Trustee states as follows:

**Preliminary Statement**

1. On August 29, 2023, Felipe Nery Gomez (Debtor) launched an unprovoked email attack targeting the AUST (and others) that exceeded the bounds of decency and decorum, raised safety concerns, and warrants the imposition of sanctions.

2. Between 4:42 p.m. and 8:05 p.m. on August 29th, the Debtor emailed the AUST a total of 24 times. Contained in those emails were an escalating series of threats, accusations and promises of relentless "retribution," many infected with invective. The AUST did not respond to any of the Debtor's emails.

3. Reliance on threatening and offensive emails is the Debtor's *modus operandi*. In this case, the Debtor has continued the exact conduct that resulted in his recent three-year suspension from the practice of law (*i.e.*, sending voluminous abusive, threatening and harassing emails). Since April 2023, the Debtor has sent upwards of 700 emails directly to or copying the AUST. In fact, the "threatening manner" of the Debtor's emails targeting the AUST before

3

August 29th resulted in the entry of an Executive Committee Order in July 2023 mandating that the Debtor be escorted by the U.S. Marshals Service at all times when in the Dirksen or Roszkowski Courthouses.

4. For the reasons stated more fully herein, the Court should enter sanctions against the Debtor (i) barring him from having any extrajudicial contact with the U.S. Trustee, Assistant U.S. Trustee and any employee of the Chicago field office of the United States Trustee Program, (ii) requiring the Debtor to pay a monetary sanction in the amount of the U.S. Trustee's legal fees in this matter, but only if the Debtor violates the no-contact order and (iii) including any other relief that the Court deems just and proper under the circumstances.

## Summary of Relevant Facts

5. On March 7, 2023, the Debtor filed a *pro se* voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor – a suspended attorney – has represented himself throughout this case.

6. Frank J. Kokoszka was appointed Chapter 7 Trustee (Trustee) on April 17, 2023. Previously, the trustee assignment transitioned between the Cook and Kane/DuPage county "sub-panels" due to confusion arising from addresses the Debtor reported on his petition. The Debtor admittedly reported a non-existent physical residence in Cook County, and a mailing address in DuPage County. *See* Dkt. No. 1.

7. The Debtor's case has been contentious for the singular reason that the Debtor refuses to accept that the Trustee has the exclusive statutory right to exercise control over estate property. While there has been much litigation in the case (and in lawsuits in which the estate is a party) related to that issue, those particulars are not relevant for purposes of this Motion. What

is relevant, however, is that the Debtor's refusal to abide by this Court's orders and directives, as well as directives from the Trustee to "stand down."

### *The Debtor's Initial Email Barrage*

8.      Prior to January 2022, the Debtor was an attorney licensed to practice in the State of Illinois. In January 2022, the Debtor was suspended from practice for a period of three years. In its Report and Recommendation, the Hearing Board of the Illinois Attorney Registration and Disciplinary Commission detailed the Debtor's misconduct, which involved sending repeated emails to parties and counsel that were abusive, threatening, insulting and harassing. A copy of the Report and Recommendation is annexed hereto as **Exhibit A**. After a hearing in which the Debtor participated, the Hearing Board found the Debtor's conduct to be "extreme and egregious" (pg. 22), repetitive (pg. 22), and that it "caused the recipients of his emails to feel embarrassed, harassed, and fearful for their safety." (pg. 23). In a prescient comment, the Board noted that the Debtor did not show that he "intend[ed] to reform his communications in the future." (pg 24).

9.      The Debtor did not reform his communications. Undeterred by his suspension, the Debtor admittedly continued his "extreme and egregious" email practice in this case stating that since he was no longer a lawyer, he could say whatever he wanted. *See* **Exhibit B**. In this case, the Debtor continued the exact conduct that resulted in his suspension from the practice of law (*i.e.*, sending voluminous abusive, threatening and harassing emails to counsel and parties in matters in which the Debtor is involved).

10.     Since April 2023, the Debtor has sent upwards of 700 emails directed to or copying the AUST. In addition to the oppressive volume of emails, the tone and content are alarming – most of the emails are abusive, threatening and harassing. In the Debtor's failed

5

attempt to convert this case to Chapter 13, the U.S. Trustee addressed the Debtor's email campaign at length in the U.S. Trustee's Objection. *See* Docket Entry No. 111 and the exhibits thereto.

11.     As a result of the "threatening manner" of the Debtor's emails to the AUST, on July 13, 2023, the Executive Committee for the Northern District of Illinois entered an Order prohibiting the Debtor from being in the Dirksen or Roszkowski Courthouses without signing in and being escorted by the U.S. Marshals Service at all times while in either building (Escort Order). *See* **Exhibit C.**

### *The Debtor's August 29th Unprovoked Email Attack*

12.     On August 29, 2023, the Debtor launched an unprovoked email attack targeting the AUST (and others) that exceeded the bounds of decency and decorum, raised safety concerns, and warrants the imposition of sanctions.

13.     Between 4:42 p.m. and 8:05 p.m., the Debtor emailed the AUST a total of 24 times.. Contained in those emails were an escalating series of threats, accusations and promises of relentless "retribution," many colored by language and name-calling that has no place in federal court. Unredacted copies of all 24 emails are annexed collectively as **Exhibit D**.[1] The AUST did not respond to any of the Debtor's emails.

14.     Given the volume emails, the U.S. Trustee will not excerpt each instance of abusive, threatening or harassing statements, but he offers the following as examples:

*4:52 p.m.* I'm going to sue you as much as I can Adam not see you because your face makes me nauseous along with all the other Epstein people.

---

[1] The U.S. Trustee apologizes in advance for the inappropriate language set forth herein. However, inclusion is necessary for the Court to appreciate the nature of the Debtor's conduct. All grammatical errors and typos in the excerpts belong to the Debtor. Relevant portions of the emails in Exhibit D are denoted for the Court's convenience.

*5:04 p.m.* I'm going to prosecute you as a RICO perp. You gambled. You lost…I intend to publish all attempts to harass me by using what government Powers you think you have so you need to knock it off and I'm still going to pursue you and until you capitulate I will not stop pursuing you in court not physically so not knock rhat crap off bro…Anyway man the man you're getting sued as much as I can and you're not going to have the United States government defending you on certain claims I'm going to bring…You want to keep smirking or do you want to try to fucking work it out?

*5:26 p.m.* You're an idiot Adam. I'm going to defeat you in court and expose what a moron you are…I'm going to sue your boss. You guys are corruptor than fuck. When you try to put somebody in jail and two days before it they get another judge to agree that the United States is full of shit, and where I represent the United States and you cocksuckers are self-serving. It's way on Adam keep smirking I'm going to wipe that off your face with the Supreme Court.

*6:00 p.m.* …Are you a pussy or what? It's you and me…You're a joke. I'm going to pursue you because you are not doing government service you are submerging and being your own little prick…I intent to prosecute both of you into jail.

*6:17 p.m.* …I'm calling you a cocksucker Adam why don't you see what judge golgar says about it and what the fuck I care about it it's my opinion.

*6:23 p.m.* My observations are that you guys are all engaged in illegal activity that doesn't benefit the United States of America and you need to get your shit straight now but you can't so you're going to get straightened out for you.

*6:32 p.m.* …I'm not letting this one go and there's not one of you who's going to escape this.

*6:39 p.m* …I'm not calling the United States Attorney a cocksucker I'm calling Frank and Adam cocksuckers.

*7:57 p.m.* I'm going to file a motion in front of just Goldgar telling him that two circuits have disagree with him and he's full of shit and I'm going to see that you guys are full of shit too except I won't use the word shit….

You are my hobby…My hobby is correcting illegal individuals such as yourselves…

As a Jew I promise you retribution in kind with no physical threats. That means I'm going to pursue each one of you for all you've got including your relatives…

*8:05 p.m.* Last chance…We have an active IRS complaint against you and I have active FBI and personal RICO complains that I'm not going to compromise…This is Jewish money you guys are fucking with so I'm going to refer this to Israel and I'm going to try to enforce it that way.  Shalom.

15. Due to the escalating nature and content of the Debtor's emails, all of which were sent while the Debtor was already the subject of the Escort Order, the AUST provided copies of the Debtor's emails to the U.S. Marshal's Service for review.

**REQUEST FOR RELIEF**

16. The U.S. Trustee seeks entry of an order barring the Debtor from having any extrajudicial contact with the U.S. Trustee, Assistant U.S. Trustee and any employee of the Chicago field office of the United States Trustee Program. The U.S. Trustee further seeks the imposition of monetary sanctions against the Debtor, as discussed further *infra*, and any further relief that the Court deems just and proper. The Debtor's August 29th email barrage exceeded the bounds of decency and decorum, raised safety concerns, and warrants the imposition of sanctions.

    *A.    The Bankruptcy Court has Multiple Sources of Authority to Impose a No-Contact Order as a Sanction Against the Debtor*

17. The Bankruptcy Court has multiple sources of authority to impose a no-contact order as a sanction against the Debtor. "A bankruptcy court's power to control the conduct of parties before it, including to determine that a party should be sanctioned for contemptuous conduct, is based both in 11 U.S.C. § 105(a), (internal citations omitted), and in the inherent power of the federal courts." *In re Ramirez,* 547 B.R. 449, 453 (Bankr. S.D. Fla. 2016); *see also In re Haque*, 395 B.R. 799, 803 (Bankr. S.D. Fla 2008) (internal citations omitted) (same).

18. "Section 105 grants broad powers to bankruptcy courts to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert,* 110 F. 3d 494, 500, 501 (7th Cir. 1997); *see also In re Haque*, 395 B.R. at 804 (same) (internal citations omitted). *In re Meltzer*, 535 B.R. 803, 821 (Bankr. N.D. Ill. 2015) (bankruptcy courts vested

with power to impose filing restrictions under Section 105(a), "which confers broad powers…to prevent an abuse of the bankruptcy process".). Moreover, Section 105(a) authorizes a court to "restrict the litigant's conduct" through an appropriate sanction to prevent an abuse of the bankruptcy process. *In re Kozich*, 406 B.R. 949, 955 (Bankr. S.D. Fla. 2009).

19.     Likewise, "[t]he inherent power of the federal court to punish for improper conduct is well established and this power reaches both conduct before the court and that beyond its confines…" *In re Ramirez,* 547 B.R. at 453; *see also In re Haque*, 395 B.R. at 803 (internal citations omitted) (same); *In re Kozich*, 406 B.R. at 955; *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993) ("…it is now clear that a federal court has the inherent power to sanction for conduct which abuses the judicial process.").

20.     "[A]busive conduct sanctionable under the Court's inherent power includes extrajudicial communications intended to harass or intimidate opposing parties, their counsel, or the Court." *Fredin v. Middlecamp*, 2020 WL 6867424, at *5 (D. Minn. Nov. 23, 2020) (plaintiff's online assault on reputations of opposing counsel, judges and court staff in order to bully defendants into favorable settlement and influence court rulings precisely type of "bad faith, vexatious and oppressive conduct court's inherent powers exist to prevent"); *see also Jaye v. Barr*, 2021 WL 1148953, at *10 (D. N.D. Mar. 25, 2021) (plaintiff sanctioned for repeatedly insulting, threatening and harassing judge and opposing parties) (citing *Frumkin v. Mayo Clinic*, 965 F.2d 620 (8th Cir. 1992) (upholding sanction in response to litigant threatening witnesses); *Myart v. Taylor*, 2016 WL 5376227 (W.D. Tex. Sept. 26, 2016) (granting preliminary injunction enjoining the plaintiff from harassing contacts with the defendants); *Nguyen v. Biter*, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015) (sanctioning *pro se* litigant for including harassing communications in court filings and messages to opposing counsel); *Blum v. Schlegel*, 1996 WL

925921, at *8 (W.D.N.Y. May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning litigant for sending letters to third parties disparaging opposing counsel and the presiding judge)).

21. Courts are vested with the "ability to control judicial proceedings, *i.e.*, to maintain the decorum of the institution, which includes the conduct of parties involved." *In re Haque*, 395 B.R. at 804; *see also Jaye*, 2021 WL 1148953, at *10 (court has inherent power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."). When a party has "acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' a court may use its inherent power to impose sanctions. *In re Haque*, 395 B.R. at 804. Indeed, courts "have the duty to sanction such misconduct." *Fredin*, 2020 WL 6867424, at *6. As the Court of Appeals for the Seventh Circuit has stated,

> [m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court.

*Barnhill*, 11 F.3d at 1368.

22. The Debtor's *pro se* status is irrelevant. "[P]arties and counsel have a duty to behave civilly and respectfully toward one another, and conduct to the contrary is sanctionable where it undermines the integrity of the judicial proceedings." *Nguyen*, 2015 WL 366932, at *7 (inappropriate tone and content are tantamount to bad faith requiring sanction). Although the Debtor is *pro se* in this case, he is a suspended attorney and is fully aware of the minimal standards of decorum and decency mandated by the Rules of Professional Conduct and the Northern District.

23. Thus, whether relying on Section 105(a) or its inherent powers, the Court has authority to sanction the Debtor for his conduct.

### B. The Debtor's Conduct is Sanctionable

24. The Debtor's conduct is sanctionable. No matter how steadfastly the Debtor holds to his frivolous beliefs about how the bankruptcy process works, the Debtor does not have the right to harass, threaten and attack the AUST (or any party) in extrajudicial communications.

#### i. A No-Contact Sanction is an Appropriate Sanction

25. There is ample authority supporting the U.S. Trustee's request for entry of an order barring the Debtor from having any extrajudicial contact with the U.S. Trustee, AUST and any employee of the Chicago field office of the United States Trustee Program[2]. *See* ¶¶ 14, 20 *supra,* and Exhibit D. "[C]ourts do have the power to enjoin harassing communication[s]." *See Myart*, 2016 WL 5376227, at *4; *Barnhill*, 11 F.3d at 1368 (court has duty to sanction misconduct). Indeed, this is "precisely the type of bad faith, vexatious and oppressive conduct the Court's inherent powers exist to prevent." *Fredin* 2020 WL 6867424, at *6 (quoting *Chambers,* 501 U.S. at 44) (enjoining a party's improper on-line postings about other parties); *see also Nguyen*, 2015 WL 366932, at *7 (inappropriate tone and content in letter from defendant to prosecutor is tantamount to bad faith and resulted in sanction); *Barnhill*, 11 F.3d at 1368.

26. In Exhibit D, the U.S. Trustee has proffered irrefutable evidence of the Debtor's sanctionable conduct. The express language of the August 29th emails prove that the emails are intended to harass, intimidate and threaten the AUST. There is no way the emails reasonably can

---

[2] Because the Debtor directs his invective toward anyone who he believes has wronged him, the AUST has refused to assign this case to a USTP Trial Attorney to protect them from becoming one of the Debtor's additional targets. This factor has had a direct impact on Office operations.

be read to support any other conclusion.[3] And this conclusion is bolstered by the fact that the Debtor's career as an attorney effectively was ended by this exact conduct, which was painstakingly detailed in the ARDC's January 2022 decision. *See* Exhibit A.

27. The impact on the AUST and USTP from the Debtor's emails has been substantial. In addition to time and resources spent as a result of having to review and preserve the emails (the Debtor is a prolific FOIA requester, totaling six so far to the USTP in this case), the August 29th emails have had an emotional impact on the AUST.

28. The Debtor's emails contain repeated threats against the AUST and promises of relentless "retribution." The Debtor has called the AUST "every name in the book," and says the AUST should be investigated by the FBI, should be criminally charged and imprisoned, should and will be the subject of ethics complaints, will be the subject of a RICO complaint, and should be publicly shamed by the media (who the Debtor copies on many of his emails). The Debtor already has lodged a complaint against the AUST with the EOUST, and has filed a lawsuit against the AUST in federal court in Washington, D.C. While of course there is absolutely no merit to any of the Debtor's claims, that truth does not lessen the impact on the AUST.

29. The Debtor's emails on August 29th have resulted in the AUST feeling an ever-present threat and professional and personal distraction.[4] *See Nguyen*, 2015 WL 366932, at \*3 (if

---

[3] To the extent none of the relevant facts in support of the Motion are in dispute, no evidentiary hearing is necessary or required. *See In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009).

[4] While the Debtor's August 29th emails underlie this Motion, those must be read through the lens of the Debtor's prior emails. Just two are excerpted for context: in an email directed to the AUST, the Debtor wrote in part (all errors and typos are the Debtor's):

> …I'm really really unhappy and when I wake up in the morning the first thing I think about is you and Frank and how you're trying to screw me over in my opinion no amount

threats "left unchecked, no telling how far he may go."). Under no circumstances should any public servant acting within the bounds of their position have to endure even a fraction of the reprehensible conduct that the Debtor has displayed. *See e.g., In re Woodruff*, 580 B.R. 291 (Bankr. M.D. Ga. 2018) (chapter 7 debtor's conversion to chapter 13 denied under *Marrama* standard given debtor's "reprehensible" and "atypical bad faith" in threatening trustee with administrative complaints, civil actions, and violence in an attempt to discourage trustee's opposition to conversion and to obtain control of the estate's assets). Here, the Debtor's conduct is offensive to the integrity and administration of this Court and the bankruptcy process, and needs to be stopped.

30.     While "extreme conduct warrants an extreme sanction," *Jaye*, 2021 WL 1148953, at *9, that is not what the U.S. Trustee seeks at this time. Instead, the U.S. Trustee seeks only entry of a permanent no-contact order barring the Debtor from any extrajudicial contact *via* any medium (written or oral) with the U.S. Trustee, Assistant U.S. Trustee and any employee of the Chicago field office of the United States Trustee Program. If granted, this tempered sanction would represent this Court's exercise of caution in imposing an appropriate sanction, as more severe options are available to the Court. *See Chambers*, 501 U.S. at 44 (instructing courts to

---

of painting me is a bad lawyer or a bad mouth lawyer is going to help you because my alleged offenses were in 2018 and it's 2023 now and I'm not a lawyer anymore….

I will not relent…

*See* **Exhibit B**. In the other example, the Debtor wrote:

Every time I think about you I start seeing red however I'm seeing black and white now because I'm going to continue to sue you in the United States and Frank as necessary to get you to alter your conduct.

*See* **Exhibit E**

13

exercise caution when using inherent powers to impose sanctions). As the Debtor has no need to communicate with anyone from the Chicago field office to prosecute his bankruptcy case, a no-contact order will not impair the Debtor's substantive rights in any way. *See Myart*, 2016 WL 5376227, at *5 (enjoining plaintiff from contacting defendants "will not prevent him from effectively prosecuting his case"); *see also Jaye*, 2021 WL 1148953, at *10 (extrajudicial communications "serve no legitimate purpose and are clearly designed to disparage and harass the court and opposing parties."). And because the bar would apply only to extrajudicial communications, litigation involving the USTP and Debtor would not be impacted.

31.   Accordingly, for the reasons stated herein, the Court should sanction the Debtor's conduct by prohibiting the Debtor from future extrajudicial communications with the U.S. Trustee, Assistant U.S. Trustee and any employee of the Chicago field office of the United States Trustee Program.

### ii.   *Entry of a Suspended Monetary Sanction is Warranted*

32.   In addition to and notwithstanding the foregoing, the Court should enter a monetary sanction against the Debtor for his bad faith conduct in using extrajudicial communications to harass, intimidate and threaten the AUST, and to otherwise obstruct and frustrate the bankruptcy process. Relying either upon its authority under Section 105(a) or its inherent powers, the Court has the power to impose monetary sanctions. *See e.g., In re Rodriguez*, 652 B.R. 750, 764 (Bankr. S.D. Tex. 2023) (tactics employed by [parties] constitute an abuse of the bankruptcy process warranting monetary sanctions under § 105(a) and inherent authority in order "to deter repetition of such conduct or comparable conduct by others similarly situated."); *In re Miszko*, 627 B.R. 809, 817 (Bankr. S.D.N.Y. 2021) ("the plain meaning of Section 105(a) endorses monetary sanctions at least insofar as they deter future misconduct—

14

especially when that language is construed broadly, as the Second Circuit has emphasized that it should be."); *In re Schuessler*, 386 B.R. 458, 493 (Bankr. S.D.N.Y. 2008) (same). The U.S. Trustee incorporates the foregoing factual discussion to demonstrate the basis for a sanction award.

33.    The Debtor should be required to pay for the USTP's legal fees in preparing, prosecuting and enforcing an order granting this Motion. If the Court grants this relief, the USTP will submit a Statement of Services, with detailed time entries establishing the amount of the requested fees as of the date of submission.

34.    However, the U.S. Trustee would suspend enforcement of this component of sanctions for as long as the Debtor remains in compliance with the no-contact order. In other words, the Debtor would be required to pay only if he violates the no-contact order. Granting this provision would represent the cautious exercise of the Court's discretion in sanctioning the Debtor's conduct. *See Chambers*, 501 U.S. at 44 (instructing courts to exercise caution when using inherent powers to impose sanctions).

35.    Finally, the U.S. Trustee seeks entry of any further relief that the Court deems just and proper under the circumstances.

### Conclusion

36.    For the reasons stated more fully herein, the U.S. Trustee seeks entry of an order sanctioning the Debtor as follows: (i) barring him from having any extrajudicial contact with the U.S. Trustee, Assistant U.S. Trustee and any employee of the Chicago field office of the United States Trustee Program, (ii) requiring the Debtor to pay a monetary sanction in the amount of the U.S. Trustee's legal fees in this matter, but only if the Debtor violates the no-contact order and (iii) for any other relief that the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED:

PATRICK S. LAYNG
UNITED STATES TRUSTEE

DATED: September 11, 2023

/s/ *Adam G. Brief*
Adam G. Brief, Assistant U.S. Trustee
Office of the United States Trustee
219 South Dearborn, Room 873
Chicago, Illinois 60604
Tel. (312) 886-2805